Mary Lynn MEYERS; Donald F. Meyers, Executor of the Estate of Geraldine E. Meyers, Appellants,

v.

Betty KALLESTEAD d/b/a Bette Mom's Tavern, Appellee.

No. 90–1310.

Supreme Court of Iowa.

Oct. 16, 1991.

A. John Frey, Jr. of Jurgemeyer, Frey & Haufe, Clinton, for appellants.

Frank R. Fuhr of Klockau, McCarthy, Ellison & Marquis, P.C., Rock Island, Ill., for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The issue in this dram shop tort action is whether the nonresident tavern owner has sufficient minimum contacts with Iowa to confer personal jurisdiction. The nonresident owner challenged the court's jurisdiction by filing a motion to dismiss. Iowa R.Civ.P. 104(a). The district court found the owner lacked minimum contacts with Iowa as required by Iowa Rule of Civil Procedure 56.2 and granted the owner's motion to dismiss. We affirm.

I. *Scope of Review.* When reviewing a motion to dismiss for lack of personal jurisdiction over a defendant, our well established standard of review is:

> [W]e accept as true the allegations of the petition and the contents of uncontroverted affidavits. The plaintiff has the burden to sustain the requisite jurisdiction, but when he [or she] establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing. The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law.

*Percival v. Bankers Trust Co.*, 450 N.W.2d 860, 861 (Iowa 1990).

When resolving jurisdictional questions regarding nonresidents, the allegations of the petition which go to the merits of the claim are taken as true; other allegations in the petition may be contradicted by affidavits, testimony, and other evidence. *Martin v. Ju–Li Corp.*, 332 N.W.2d 871, 873 (Iowa 1983). The minimum contacts test is not susceptible of mechanical application; each case must be weighed to determine whether affiliating circumstances are present. *Lansky v. Lansky*, 449 N.W.2d 367, 369 (Iowa 1989).

II. *Background.* The plaintiffs' petition alleges Betty Kallestead owns and operates a business in Savanna, Illinois, known as Bette Mom's Tavern. Alcoholic beverages are sold there. On December 16, 1989, Kallestead or her agents or employees, sold and served James Hall alcoholic beverages when he was intoxicated or when Kallestead or her agents or employees should have known he would become intoxicated. The sale and service of alcoholic beverages to Hall was a proximate cause of his intoxication. While in an intoxicated condition, Hall drove his truck into an automobile driven by Mary Lynn Meyers on U.S. Highway 67 in Clinton County, Iowa, causing injury to her and the death of Geraldine E. Meyers. The petition alleges both dram shop and common law claims against the tavern owner.[1]

Kallestead filed a motion to dismiss for lack of jurisdiction over the person. The motion was supported by her affidavit stating she is a Savanna, Illinois, resident; she is the owner and operator of a business known as Bette Mom's in Savanna; and she holds a liquor license issued by Savanna and the State of Illinois. Her affidavit further states that she does not advertise in any Iowa newspaper or other media, and does not advertise in any media whatsoever that is circulated or broadcast in the state of Iowa; and that she does not own or operate any business in the state of Iowa

---

1. The petition originally alleged a cause of action against Hall. This action was severed and later dismissed.

nor does she possess an Iowa liquor license.

Meyers filed a memorandum in resistance to the motion. In the memorandum Meyers suggests the court take judicial notice that Savanna is connected to Iowa by a bridge crossing the Mississippi River and argues Kallestead should anticipate that patrons of her tavern might travel into Iowa.

Based upon a finding that she lacks the minimum contacts with the state of Iowa to subject her to the jurisdiction of the Iowa court, the district court granted Kallestead's motion. Meyers appealed.

■■■ III. *Personal Jurisdiction.* The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales De Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Whether Iowa may exercise jurisdiction consistent with due process depends on whether the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notion of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03 (1945). In determining whether the suit passes due process requirements, the critical focus is on the relationship among the defendant, the forum and the litigation. *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516, 524 (1980). This relationship is defined by the defendant's contacts with the forum state, not with its residents. *Hanson v. Denckla,* 357 U.S. 235, 250–55, 78 S.Ct. 1228, 1237–40, 2 L.Ed.2d 1283, 1295–98 (1958). Jurisdiction of the person lies where the defendant has purposely directed its activities at residents of the forum state, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797–98 (1984), and litigation results from alleged injuries that arise out of or are related to those activi-

ties. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 411. *See also State v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371, 375–77 (Iowa) *cert. denied,* —— U.S. ——, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990).

■■ When determining whether sufficient contacts exist to support the exercise of jurisdiction over a nonresident defendant, our court has looked at the following factors, concentrating on the first three: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience of the parties. *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980). Rule 56.1 expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution. *Id.*

Under these broad parameters, we held in personam jurisdiction existed over a nonresident defendant whose only contact with Iowa was a long distance telephone call to the plaintiff in Iowa. *Norton v. Local Loan,* 251 N.W.2d 520, 521 (Iowa 1977). This holding was based upon the reasoning of *Edmundson v. Miley Trailer Co.,* 211 N.W.2d 269 (Iowa 1973). In *Edmundson* we recognized a national tendency which generally required less and less contact to satisfy the minimum contacts for due process. *Id.* at 272. We stated it was reasonable to assume that the nonresident defendants, the manufacturer and retailer of the trailer and hitch, would be subject to a lawsuit anywhere the trailer and hitch would travel. *Id.* Later we overturned the *Edmundson* holding because it was at odds with *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *See Smalley v. Dewberry,* 379 N.W.2d 922, 924–25 (Iowa 1986).

Like our decision in *Smalley,* the Minnesota Supreme Court has recognized that *World–Wide* changed due process analysis of personal jurisdiction. This is reflected in the context of personal jurisdiction over border state liquor vendors. Prior to *World–Wide,* the Minnesota Supreme Court found its court had personal jurisdic-

tion over the operator of a tavern located three miles south of the Iowa–Minnesota border who illegally sold liquor to Minnesota ·residents who subsequently became involved in a Minnesota accident. *Anderson v. Luitgens*, 311 Minn. 203, 247 N.W.2d 913 (1976). The court noted it was reasonable for the tavern owner to foresee that making illegal sales might lead to consequences such as those which resulted. The Minnesota court also upheld personal jurisdiction over a Wisconsin border state liquor vendor under similar circumstances. *See Blamey v. Brown*, 270 N.W.2d 884 (Minn.1978), *cert. denied*, 444 U.S. 1070, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980). In both of these cases the court found the minimum contacts requirement had been satisfied. The court's rationale recognized Minnesota had a strong interest in providing a forum, that Minnesota was a convenient forum, and that the consequences of the sale of liquor, *i.e.*, an accident in Minnesota, was foreseeable.

Later, the Minnesota Supreme Court overruled these cases. In *West American Insurance Co. v. Westin, Inc.*, 337 N.W.2d 676, 678–79 (Minn.1983), the court recognized it had previously addressed the issue of personal jurisdiction over border state liquor vendors. The court stated:

> In *World–Wide* and *Rush*, the United States Supreme Court attempted to slow the inexorable expansion of jurisdiction in state courts by underlining the significance of territoriality and de-emphasizing the relative importance of "fairness" to the defendant.... These cases evidence a dramatic shift in the constitutional theoretical underpinnings of personal jurisdiction. After *World–Wide* and *Rush*, the critical focus in any jurisdictional analysis must be on "the relationship among the defendant, the forum and the litigation." ... This tripartite relationship is defined by the defendant's contacts with the forum *state*, not by defen-

dant's contacts with *residents* of the forum. (Citations omitted.)

337 N.W.2d at 678–79. The court further stated:

> Ordinarily, we should hesitate to overturn our own precedential decisions, but where, as here, our precedent is patently contrary to constitutional principles authoritatively declared by the United States Supreme Court, we have no proper alternative.

*Id.* at 681.[2]

■ Under the rationale of *World–Wide*, we focus our attention on Kallestead's contacts with Iowa. We find the record fails to establish that she has the required minimum contacts with our state. There is no indication that she has purposefully availed herself of the privilege of conducting activities within this state. Her only contact with Iowa is through Hall who drove into Iowa after leaving her tavern.

■ IV. *Disposition.* We conclude the trial court correctly determined Kallestead had not purposefully established minimum contacts in Iowa. Although Meyers argues Kallestead should have foreseen her conduct would cause injury in another state, the Supreme Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542 (1985). "The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.*

We affirm the district court's dismissal of the action against Kallestead.

AFFIRMED.

---

**2.** The Minnesota courts have subsequently asserted personal jurisdiction over border state liquor vendors. In these cases, sufficient facts were established showing that the nonresident defendant purposefully established minimum contacts. *See Lawson v. Darrington*, 416 N.W.2d 841 (Minn.Ct.App.1987); *BLC Ins. Co. v. Westin, Inc.*, 359 N.W.2d 752 (Minn.Ct.App.) *pet. for rev. denied without op.* (Minn.) *cert. denied*, 474 U.S. 844, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985).