**Joan TWADDLE, Appellant,**

v.

**Donald TWADDLE, Appellee.**

No. 96–1800.

Court of Appeals of Iowa.

May 29, 1998.

Matthew G. Woods of Peters Law Firm, P.C., Glenwood, for appellant.

Kristopher K. Madsen of Stuart, Tinley, Peters, Thorn & Hughes, Council Bluffs, for appellee.

Considered by CADY, C.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

Joan Twaddle appeals the district court's ruling dismissing the breach of contract and promissory estoppel action against her son, Donald Twaddle, a Minnesota resident, for lack of personal jurisdiction. As we determine Donald did not have sufficient minimum contacts with Iowa, we find the suit was properly dismissed.

***Background facts.*** Donald was born in Iowa in 1942 but moved in 1976 to Minnesota. Joan's residence is Mills County, Iowa. By April 1989, Donald was having difficulty repaying a loan to the Farmers' Home Administration ("FmHA") for the purchase of his Minnesota farm. After Joan discussed loaning Donald the money he needed, Donald indicated in a letter to Joan that he was willing to accept a loan from her at eight and one-half percent interest. Joan claims that on the basis of the letter, she sent a cashier's check in the amount of $35,136 to FmHA. Donald subsequently made three loan payments to Joan during the summer of 1989, totaling $900. He failed to make additional payments on the loan. Joan claims that the parties had various telephone conversations since 1989 regarding the loan and that Donald has maintained contact with her in Iowa.

In April 1996, Joan commenced an action against Donald for breach of contract and promissory estoppel based on his failure to repay the loan. Joan sought a judgment against Donald for the unpaid amount of the loan plus eight and one-half percent interest from May 1989.

Donald filed a motion to dismiss for lack of personal jurisdiction which Joan resisted. After a hearing, the district court granted the motion to dismiss, determining that the court did not have personal jurisdiction over Donald. The court reasoned that Donald was a resident of Minnesota and that there were insufficient contacts for Iowa to be a proper forum for this lawsuit. The court noted that the only significant contact was that Joan's residence was in Iowa and the money for the loan came from Iowa.

Joan appeals.

***Scope of review.*** When reviewing a ruling on a motion to dismiss for lack of personal jurisdiction, the trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record, but we are not bound by the trial court's application of legal principles or its conclusions of law. *Hagan v. Val–Hi, Inc.,* 484 N.W.2d 173, 175 (Iowa 1992).

■ Formerly, Iowa courts engaged in a two-step process for determining personal jurisdiction over a nonresident defendant under the Due Process Clause of the Fourteenth Amendment to the federal constitution. *See OmniLingua, Inc. v. Great Golf Resorts of World, Inc.,* 500 N.W.2d 721, 723 (Iowa App.1993) (stating a court must first determine whether jurisdiction is authorized by statute under Iowa law, and then it must determine whether there were sufficient minimum contacts consonant with due process to assert jurisdiction over the nonresident defendant). Iowa courts now collapse the two steps into one as "Iowa Rule of Civil Procedure 56.2 expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution .... equivalent to the outer limits of due process."[1] *Hodges v. Hodges,* 572 N.W.2d 549, 552 (Iowa 1997) (citations omitted).

■ *Minimum contacts.* For Iowa to assert personal jurisdiction over Donald, he must have had "certain minimum contacts with [Iowa] such that maintenance of the suit [in Iowa] does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03 (1945); *Meyers v. Kallestead,* 476 N.W.2d 65, 67 (Iowa 1991); *accord Hodges,* 572 N.W.2d at 551. In order to determine whether a court possesses personal jurisdiction over a nonresident defendant, we examine five factors, the first three of which are most heavily weighed: (1) the quantity of contacts the party has with the state seeking to exercise jurisdiction; (2) the nature and quality of the contact; (3) the source and connection of the cause of action with these contacts; (4) the interest of the forum state; and (5) the convenience of the parties. *See Bankers Trust Co. v. Fidata Trust Co.,* 452 N.W.2d 411, 413 (Iowa 1990) (citing *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980)). We apply the constitutional minimum contacts standard on a case-by-case basis. *Hes-*

*linga v. Bollman,* 482 N.W.2d 921, 922 (Iowa 1992).

In *In re Marriage of Crew,* 549 N.W.2d 527, 530 (Iowa 1996), our supreme court held family contacts unrelated to the cause of action were not sufficient to establish personal jurisdiction. In that case, a nonresident father, who had never been in Iowa, but whose former wife and children were Iowa residents, could not be haled into the courts of Iowa for purposes of modification of child support based solely on his contacts with his children over the phone and correspondence with them. *Id.* The court found that although the father had many contacts with his children in the State of Iowa, the contacts, important on a personal level, were not *constitutionally* sufficient to confer jurisdiction as the cause of action—modification of child support—did not stem from his personal contacts. *Id; Cf. Hodges,* 572 N.W.2d at 552 (distinguishing *Crew* case, and holding personal jurisdiction in *Hodges* was appropriate where the alleged contacts with the State of Iowa—false representations in letters and phone calls—were the basis of the claims being asserted).

■ Similarly, while Donald has maintained contacts with his mother in Iowa over the past twenty-two years, he long ago relinquished his legal ties to Iowa when he chose Minnesota as his official domicile and residence. His only remaining tie to Iowa was with his mother, a resident of Iowa, who he has spoken to repeatedly over the years, but not for the sole purpose of soliciting money.

■ The contacts Donald made regarding the loan were either by phone or mail. Such communications typically are not the type of contact alone justifying assertion of jurisdiction over nonresident parties. *See Fidata,* 452 N.W.2d at 414 (holding phone calls and mailings were "not the type [of connections] that would have led [the nonresident party] to believe it would be haled into [the] court"

---

1. Iowa Rule of Civil Procedure 56.2 provides in relevant part:

Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction

of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

of the plaintiff's home state); *accord Omni-Lingua, Inc.*

■ "[I]t is essential ... the defendant *purposefully* avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958) (citing *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 161, 90 L.Ed. at 103) (emphasis added). The "purposeful availment" requirement prevents a nonresident defendant from being haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985); *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371 (Iowa 1990).

It is critical in our analysis that the nonresident, Donald, did not actively solicit the loan from his mother. His letter to his mother dated April 25, 1989, stated in part:

> When this whole thing [about a lack of funds] came up *it never occurred to me to ask you for the loan* because I know how you feel about your money. *Then you called me and offered to loan me the money.* Believe me, I was suspicious but *after you offered me the loan the second time,* I decided you must be serious, and I started planning what and how.

(Emphasis added.) Thus, Donald did not purposely inject himself into Iowa for the purposes of "doing business" with his mother; he merely accepted an offer by his mother to help him with financing the farm. *See OmniLingua,* 500 N.W.2d at 725 (holding the fact that contract was solicited by the resident plaintiff bore upon the source and connection of the forum state with the cause of action; court concluded Great Golf, the nonresident, "did not unilaterally inject itself into doing business in Iowa," and therefore Great Golf was ultimately not subject to the jurisdiction of the Iowa courts).

Donald has never conducted business in the State of Iowa, nor is he presently conducting business in the State of Iowa. He does not own any property in this state, nor has he signed any documents agreeing to subject himself to personal jurisdiction of the courts in Iowa. The real estate for which Donald needed a loan is located in Minnesota. The only contact Donald has had with the State of Iowa in the past twenty-two years is phone conversations with Joan, correspondence, and occasional personal visits with Joan. Even if a promissory note or other loan agreement were signed, our supreme court has ruled Iowa's long-arm statute does not confer jurisdiction over disputes involving contracts solely on the basis they were entered into in Iowa. *Gravelie v. TBS Pacific, Inc.,* 256 N.W.2d 230, 232 (Iowa 1977); *accord Tung v. American University of the Caribbean,* 353 N.W.2d 869, 871–72 (Iowa App.1984) ("Merely entering into a contract with a forum resident ... does not provide the requisite contacts between a defendant and the forum state"; holding defendant's mailing three letters to forum state and making three telephone calls to the forum state did not constitute the requisite minimum contacts to justify forum state's jurisdiction over defendant consonant with traditional notions of fair play and substantial justice).

Moreover, even if we were to examine Joan's act of sending money to FmHA, in Minnesota, in a commercial loan context, our analysis does not change. The court in *Pioneer Ins. Co. v. Gelt* [2] stated:

> We are not prepared to say that every transaction involving the making of a loan by a lender in a forum state to a citizen or resident of some other state subjects the borrower to the *in personam* jurisdiction of the courts of the forum state merely because the loan is to be repaid in that state or because money is transmitted out of that state to the borrower.... [However,] [i]f in connection with a particular loan sufficient minimum contacts between the borrower and the forum state are developed to satisfy the requirements of due process, the borrower may be subjected to the jurisdiction of the forum under a local long-arm statute, otherwise not.

*Id.*

Additionally, in *Dollar Sav. Bank v. First Sec. Bank of Utah,* 746 F.2d 208 (3d Cir.

---

**2.** 558 F.2d 1303, 1309 (8th Cir.1977).

1984), minimum contacts were not established when a nonresident bank did no more than borrow from and repay a loan to the forum bank by wire transfer, thus the court lacked personal jurisdiction over the nonresident bank under the Pennsylvania Long–Arm Act. *Accord Pioneer*, 558 F.2d at 1309 (borrowing money from a bank in the forum state does not necessarily satisfy minimum contacts); *T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n*, 749 F.2d 523, 525 (8th Cir.1984) (per curiam). In this case, the cashier's check drew upon funds in Joan's Iowa bank account. By FmHA's act of cashing the check, FmHA caused funds from an Iowa bank to be transferred to Minnesota. Iowa does not have a long arm-statute which encompasses this activity. *See* Iowa Code § 617.3 (1995); *cf. Kennecorp Mortgage & Equities, Inc. v. First Nat'l Bank of Fairbanks*, 685 P.2d 1232, 1238 (Alaska 1984).

Finally, the *Savin* court held that because a party expects payment in a designated place (in this case it is reasonable to assume that Joan expected repayment in Iowa by Donald), this does not constitute an act by which a party, here, Donald, purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking its protection and benefits of its laws; "[r]ather, the place of payment was an unbargained for convenience for the benefit of the plaintiff," here, Joan. *See Savin v. Ranier*, 898 F.2d 304, 307 (2d Cir.1990).

In applying the foregoing analyses, we do not find Donald purposefully directed any activity in Iowa through correspondence and phone calls with Joan.

We find there was substantial evidence in the record to support the district court's finding that granting jurisdiction over Donald in Iowa does not comply with the notion of fair play and substantial justice. Accordingly, we affirm the district court's dismissal of Joan's petition against Donald.

**AFFIRMED.**