In re the MARRIAGE OF Jonathan G. WALLICK and Judith L. Wallick.

Upon the Petition of

Jonathan G. Wallick, Appellee,

And Concerning Judith L. Wallick, Appellant.

No. 93–1377.

Supreme Court of Iowa.

Nov. 23, 1994.

Jill S. Rolek, Des Moines, for appellant.

Gary A. Robinson, Brent A. Cashatt, and R.J. Hudson of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellee.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Christina F. Hansen, Asst. Atty. Gen., for amicus curiae State of Iowa.

Daphne Moritz, Waterbury, VT, for amicus curiae Vermont Office of Child Support.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The fighting issue in this appeal is whether an Iowa district court may exercise in personam jurisdiction in a dissolution modification proceeding over a nonresident parent whose home state initiated interstate income withholding proceedings in Iowa to collect past and present child support. The nonresident mother moved to dismiss, challenging the court's jurisdiction over her in the modification proceeding. The court held it had jurisdiction. On appeal, we reverse and remand.

I. *Background.*

Jonathan and Judith Wallick's marriage was dissolved by a Connecticut dissolution decree on October 17, 1985. At the time Judith and their children lived in Connecticut and Jonathan lived in Florida. Jonathan did not contest the divorce and was not present or represented by counsel when the judgment was entered. The Connecticut court granted Judith custody of the parties' three children and ordered Jonathan to pay $2000 per month in child support and $1.00 per year in alimony.

Sometime after the divorce Jonathan moved to Iowa. Although initially employed as a customer service manager, he was ultimately laid off from his job in Iowa and began receiving unemployment compensation in 1993. He continues to reside in Iowa.

Judith and the children moved to Vermont in 1991. Because she was unsuccessful in securing full-time employment, she inquired about receiving public assistance. She was told she could file for welfare; but since there was a child support arrearage, she should first contact the office of child support enforcement. The record does not indicate whether Judith and the children ever received public assistance.

The Vermont office of child support enforcement initiated proceedings to require Iowa to enforce the Connecticut child support judgment. The Iowa child support recovery unit entered an ex parte income withholding order and filed it in district court. The order required Jonathan's employer to deduct $2000 per month as payment of the current support obligation and $1000 per month towards past support. The order stated the amount of the arrearage was $97,741 as of March 23, 1993. Because $3000 per month exceeds fifty percent of Jonathan's unemployment compensation, only fifty percent of his unemployment income is withheld pursuant to the order.

Jonathan filed a motion to quash the income withholding order. He contested the amount of the arrearage, claiming he had paid substantial amounts towards the children's support and that the arrearage was much less than the stated amount. The motion to quash was overruled. Jonathan did not appeal the ruling.

In April 1993, Jonathan filed in Iowa a petition for modification of the Connecticut dissolution decree. Judith was served in Vermont with notice of the action. Jonathan claims there has been a substantial and material change in circumstances since the entry of the Connecticut decree. He alleges Judith was utilizing administrative and judicial proceedings in Iowa to collect current

and delinquent child support and that his employer in Iowa had been ordered to withhold income.

Judith filed a motion to dismiss the modification petition due to lack of personal jurisdiction. The district court overruled her motion. We granted interlocutory appeal.

## II. *Scope of Review.*

In reviewing a district court's decision to exercise in personam jurisdiction, we accept as true the allegations of the petition and the contents of uncontroverted affidavits. *State ex rel. Miller v. Internal Energy,* 324 N.W.2d 707, 709 (Iowa 1982). We are not bound by the trial court's conclusions of law or by its application of legal principles. *Larsen v. Scholl,* 296 N.W.2d 785, 787 (Iowa 1980).

## III. *Jurisdiction.*

Jonathan argues that Judith "purposefully availed" herself of Iowa's administrative and legal system by instituting proceedings to withhold his wages in Iowa, which he asserts is sufficient to give Iowa jurisdiction to modify the Connecticut decree. Judith argues that Iowa Code chapters 252A and 252D (1993) do not confer jurisdiction in Iowa to modify the Connecticut dissolution decree. Jonathan does not allege the Connecticut decree was registered in Iowa. Judith asserts that exercising in personam jurisdiction over her in the modification proceeding would violate the due process requirements of the Fourteenth Amendment of the United States Constitution.

### A. Statutory Provisions.

Iowa Code chapter 252D provides for income assignment and income withholding when court-ordered child support becomes delinquent. It permits the child support recovery unit or the district court to enter an ex parte order of an assignment of income or withholding of income or wages. Iowa Code § 252D.1. A person whose income has been assigned may challenge the order of assignment or withholding by filing a motion to quash. Iowa Code § 252D.2. The grounds for contesting a withholding order include "[a] mistake of fact, which for purposes of

this section means an error in the amount of current or overdue support or the identity of the alleged obligor." Iowa Code § 252D.11(1)(a). The court does not have authority to modify the underlying dissolution decree under the provisions of chapter 252D. *Hammond v. Reed,* 508 N.W.2d 110, 113 (Iowa App.1993).

Iowa Code chapter 252A, Uniform Support of Dependents Law (USDL), is a special procedure statute with the chief purpose of providing "a simplified two-state procedure by which the obligor's duty to support an obligee residing in another state may be enforced expeditiously and with a minimum of expense to the obligee (or the state, if the obligee is indigent)." *Beneventi v. Beneventi,* 185 N.W.2d 219, 222 (Iowa 1971) (citation omitted). Chapter 252A is very similar to the Uniform Reciprocal Enforcement of Support Act (URESA) adopted in other states. *See id.; In re Marriage of Russell,* 490 N.W.2d 810, 812 (Iowa 1992). Vermont has adopted the revised URESA. Vt.Stat.Ann. tit. 15, ch. 7 (1989).

There are two procedures used to enforce or modify a foreign support order under chapter 252A. *Russell,* 490 N.W.2d at 812. First, Iowa Code section 252A.6 allows an obligee to initiate USDL proceedings by filing a petition in a court in his or her resident state. The petition is then transferred to an Iowa court which can exercise personal jurisdiction over the obligor to withhold his or her wages. This procedure is known as "standard URESA." *Id.* Second, Iowa Code sections 252A.17 through .19 permit the obligee to register the foreign judgment in an Iowa district court. Once the judgment is registered, it has the same effect and is subject to the same proceedings as a support order issued in Iowa. Iowa Code § 252A.19(1); *Russell,* 490 N.W.2d at 812; *see also* Iowa Code § 252A.20 (Supp.1993) (setting forth the parameters for modification or adjustment of a registered foreign support order). Several states have held that registering a foreign judgment in a state pursuant to "registration URESA" gives the state jurisdiction to modify the foreign support order. *See, e.g., In re Marriage of Aron,* 224 Cal.App.3d 1086, 1090, 274 Cal.Rptr. 357, 359 (Cal.App.

1st 1990); *Malmgren v. Malmgren,* 268 P.2d 164, 166 (Colo.App.1981); *Monson v. Monson,* 85 Wis.2d 794, 803, 271 N.W.2d 137, 141 (Wis.App.1978); *Bjugan v. Bjugan,* 710 P.2d 213, 216–17 (Wyo.1985).

Neither Judith nor Vermont registered the Connecticut support order in Iowa. Therefore, the cases which hold that registration of a foreign support order gives a state jurisdiction to modify the support are not dispositive of this case. Recent statutory amendments clarify the effect of registration or filing of a foreign support order in Iowa. Iowa Code § 252A.18(3)(b) (Supp.1993) (limits issues subject to challenge where child support recovery unit initiates registration); Iowa Code § 252D.24 (Supp.1993) (entry of foreign support order along with withholding order does not constitute registration of the order).

**B. Minimum Contacts.**

■ Iowa lacks in personam jurisdiction over Judith to enter a binding decree against her. The due process clause of the Fourteenth Amendment requires that a valid judgment imposing a personal obligation or duty in favor of a plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1694, 56 L.Ed.2d 132, 140 (1978); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Personal jurisdiction requires that there be reasonable notice to the defendant and a sufficient connection between the defendant and the forum state to make it fair to force the defendant to defend the action in the forum state. *Kulko,* 436 U.S. at 91, 98 S.Ct. at 1696, 56 L.Ed.2d at 141 (citations omitted).

■ The standard by which we determine whether a state may exercise jurisdiction over a nonresident is that a defendant must "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 92, 98 S.Ct. at 1696–97, 56 L.Ed.2d at 141 (citations omitted). It is essential that the "quality and nature" of the defendant's activity be such that it is "reasonable" and "fair" to require her to conduct her defense in that state. *Id.*

■ The "minimum contacts" test, however, is not susceptible to mechanical application, and is largely dependent on the facts. *Larsen,* 296 N.W.2d at 788 (citing *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141). In applying the test, we consider five factors:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Larsen,* 296 N.W.2d at 788 (citations omitted).

Here the contact between Judith and the State of Iowa is minimal. Judith has never lived in or visited Iowa. None of the parties' children live in Iowa. The oldest child visited Jonathan in Iowa once, but the other two children have not visited the state. Vermont initiated proceedings in Iowa to collect child support from Jonathan.

■ The nature and quality of the contact is largely involuntary. Judith did not voluntarily choose Iowa as the state to enforce Jonathan's support obligation; Jonathan chose Iowa by moving to the state and continuing to reside here. Jonathan's unilateral activity cannot satisfy the requirement that Judith have contact with the forum state. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). Iowa has little interest in modifying a Connecticut support order for the benefit of children living in Vermont. It is inconvenient and burdensome to require Judith to travel halfway across the country to defend this proceeding.

Also, exercising jurisdiction in this modification proceeding would undermine the purpose behind USDL and URESA statutes. The statutes were designed to create an efficient and effective way to enforce dependent support obligations. If Iowa were to entertain modifications when a nonresident obligee merely invokes Iowa's administrative procedures for wage withholding, but does not

register the order, it might discourage attempts to collect support by obligees who fear the expense and inconvenience of being forced to defend a modification action in Iowa.

Jonathan argues that refusing to exercise jurisdiction would be unfair to him. He claims that the original support order was entered unfairly against him based upon representations Judith and her lawyer made to the Connecticut court. He also argues that his circumstances have changed so significantly since the entry of the decree that it is unfair to require him to continue to pay $2000 per month in child support. Additionally, he claims that the total arrearage set forth in the withholding order is incorrect. He admits that he is behind in child support payments, but claims he only owes $31,540 in back child support. Jonathan argues these facts favor Iowa's exercise of jurisdiction in the modification proceeding. He asserts that both the modification and challenge to the amount of the arrearage are defenses to income withholding proceedings.

There are two flaws in Jonathan's argument. First, he is arguing that the merits of his claim justifies jurisdiction of the Iowa court. A court must have jurisdiction before it may consider the merits of the claim. Second, he had an opportunity to contest the amount of the arrearages by his motion to quash. One of the bases on which he may contest the withholding order is the amount of current or overdue child support. Iowa Code § 252D.11. If Jonathan wanted to challenge the amount of the arrearage in the withholding order, he should have appealed the denial of his motion to quash.

Jonathan also argues that *Russell,* 490 N.W.2d 810, supports his claim that the court has jurisdiction. *Russell* held that chapter 252A is not the only basis to exercise subject matter jurisdiction over a foreign child support obligation. *Id.* at 814. In *Russell* the nonresident mother came to the Iowa court seeking modification of a foreign support order. By asking the Iowa court to modify the order, the mother in *Russell* consented to the court's exercise of personal jurisdiction over her for the modification proceeding. *See Burger King Corp. v. Rudzewicz,* 471 U.S.

462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528, 540 n. 14 (1985) (a litigant may consent to personal jurisdiction). *Russell,* therefore, is different from this case in which Judith has not consented to jurisdiction in the modification proceeding.

Basic considerations of fairness suggest that Vermont or Connecticut would be the appropriate forum for adjudication of the modification, whatever the merits of Jonathan's underlying claims. *See Kulko,* 436 U.S. at 97, 98 S.Ct. at 1699, 56 L.Ed.2d at 144. Vermont's initiation of interstate income withholding proceedings against Jonathan is not a sufficient contact with Iowa that Judith could reasonably have anticipated being "haled before a[n Iowa] court." *Id.* at 97–98, 98 S.Ct. at 1700, 56 L.Ed.2d at 145. It would be unfair to require her to defend the modification action in Iowa. For these reasons we reverse and remand to the district court for dismissal of the modification action.

**REVERSED AND REMANDED.**